UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

RALPH W. TIMBERLAKE, )
)
Plaintiff, )
)
vs. ) CV02-S-1355-NE
)
JOHN E. POTTER, Postmaster General, )
United States Postal Service, )
)
Defendant. )
)
)

## MEMORANDUM OPINION

Plaintiff Ralph W. Timberlake, a *pro se* litigant, sued his former employer, the United States Postal Service, with his sole allegation stating that:

> [t]he United States Postal Service has failed to allow me on Postal property to conduct business because of my race, (Afro-American), retaliation, (filing of Equal Employment Opportunity complaints), Age, (Over 40 year old), handicap, (On the job injuries and unfitness for duty report from Doctors James F. Gauthier, MD 2. Doctor Stuart Waddell, MD, 3. Doctor Charles Whetsell, Ph.D. [sic][1]

Plaintiff alleges several legal bases for his claims, including Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.*, the Civil Service Reform Act of 1978, and §§ 8(a)(5) and 8(b)(34) [sic][2] of the National Labor Relations Act.

This action currently is before the court on defendant's motion for summary judgment, and plaintiff's opposition to the same. After consideration of the pleadings, briefs, and evidentiary submissions, with proper consideration given to the fact that plaintiff is proceeding *pro se*, this court

---

[1] Complaint ¶ 1.

[2] The court assumes that defendant made a typographical error here, and intended to assert jurisdiction under §§ 8(b)(3) and (4) of the NLRA.

finds that defendant's motion for summary judgment is due to be granted as to all of plaintiff's claims.

Federal Rule of Civil Procedure 56(c) provides, in part, that summary judgment not only is proper, but "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Thus, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

> In making this determination, the court must review all evidence and make all reasonable inferences in favor of the party opposing summary judgment.
>
> The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case. The relevant rules of substantive law dictate the materiality of a disputed fact. A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor.

*Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (en banc) (quoting *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995)); *see also United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991) (en banc).

Additionally, the court recognizes that the pleadings submitted by a *pro se* litigant are to be construed with particular leniency. The principle underlying this liberal construction is "to give a pro se plaintiff a break when, although he stumbles on a technicality, his pleading is otherwise

understandable." *See Hudson v. McHugh*, 148 F.3d 859, 864 (7th Cir. 1998). However, this leniency does not extend so far as to give the court leave to serve as *de facto* counsel for a *pro se* litigant, or to rewrite any deficient pleadings. *See Fernandez v. United States,* 941 F.2d 1488, 1491 (11th Cir. 1991) (holding that *pro se* pleadings are to be liberally construed); *Gibbs v. Republic Tobacco, L.P.,* 119 F. Supp. 2d 1288, 1290 (M.D. Fla. 2001) (holding that the court would not rewrite a *pro se* litigant's pleadings).

## I. STATEMENT OF FACTS

### A. Facts Concerning Plaintiff's Removal

Plaintiff worked as a mail processor for the United States Postal Service ("USPS") in Huntsville, Alabama, until his permanent removal on August 21, 2001, after being decreed medically unfit for duty.[3] The events leading up to plaintiff's removal began around May 9, 1999, when he struck another employee with a tray of mail.[4] Plaintiff claimed that the incident was merely an accident, while the employee that plaintiff struck asserted that plaintiff intentionally struck him.[5] Following this incident, the USPS referred plaintiff to an Employee Assistance Program counselor, as well as ordering a fitness-for-duty examination.[6] As part of the fitness-for-duty examination, plaintiff was examined by three physicians.[7] All three physicians reported that plaintiff was uncooperative during evaluation.[8] The USPS subsequently removed plaintiff from employment on September 22, 1999, citing plaintiff's failure to cooperate with the fitness-for-duty examination.[9]

---

[3] Defendant's evidentiary submissions, Tab 2 (MSPB decision 3/25/02), at 1.
[4] *Id.* at Tab 1 (MSPB decision 6/6/00), at 2.
[5] *Id.*
[6] *Id.* at 3.
[7] *Id.*
[8] *Id.* at 3-4.
[9] Defendant's evidentiary submissions, Tab 1 (MSPB decision 6/6/00), at 1-2.

Plaintiff appealed his removal to the Merit Systems Protection Board ("MSPB"), which mitigated his removal to an indefinite suspension, also effective on September 22, 1999, on the grounds that plaintiff's medical condition may have rendered him incapable of cooperating with the physicians performing the fitness-for-duty examination.[10] The MSPB opinion added, however, that, "[i]f the appellant does not fully cooperate and fully participate in a fitness for duty examination after such an exam is scheduled, he will leave the agency with no choice but to remove him."[11]

Pursuant to the MSPB's order, plaintiff was again examined by two physicians on November 16, 2000, as part of his second fitness-for-duty examination.[12] The physicians issued a joint report, dated January 2, 2001, indicating that plaintiff suffers from a "personality disorder of the Cluster A type with prominent paranoid features."[13] The physicians went on to conclude plaintiff would be "unable to interact well with co-workers and supervisors, would be at high risk for engaging in disruptive behavior, and would have difficulty in accepting and complying with supervisory directions."[14] The physicians added that treatment would be unlikely to cause any significant change in plaintiff's behavior.[15] Pursuant to these findings, the USPS permanently removed plaintiff from employment, effective August 21, 2001, on the ground that he was medically unfit for employment.[16] Once again, plaintiff appealed his removal to the MSPB, which, relying largely upon the results of plaintiff's second fitness-for-duty examination, affirmed the removal in a decision

---

[10] *Id.* at 9-10.
[11] *Id.* at 10.
[12] Defendant's evidentiary submissions, Tab 2 (MSPB decision 3/25/02) at 2.
[13] *Id.*
[14] *Id.*
[15] *Id.*
[16] *Id.* at 1-3.

dated March 25, 2002 (the decision became final on April 29, 2002).[17]

Plaintiff filed a petition for review of the MSPB's decision on April 26, 2002, but a decision on the petition for review has not yet been rendered.[18]

### B.     Facts Concerning Plaintiff's Not Being Allowed on Postal Property

Plaintiff received a letter from the USPS dated June 30, 2000, forbidding his presence on postal property.[19] The court has been unable to find a copy of the letter in the evidentiary submissions, and thus cannot refer directly to it, but instead must rely upon other documents in the record which discuss this letter.

On April 23, 2001, plaintiff contacted an EEO counselor, alleging that he had been discriminated against, based on claims that he had not been paid in ten months, and was not allowed on postal property.[20] On August 28, 2001, the USPS issued a final agency decision, dismissing plaintiff's EEO claims on the grounds that the claims were untimely, because plaintiff had waited approximately nine months after the complained-of incident (*i.e.*, receipt of the June 30, 2000 letter) to contact an EEO counselor, which far exceeded the 45-day time limit provided by law.[21]

Plaintiff nonetheless appealed the final agency decision to the EEOC. The EEOC subsequently affirmed the dismissal of plaintiff's EEO complaint in a decision dated February 6, 2002, on identical grounds, *i.e.*, that plaintiff's complaint was time-barred, noting that plaintiff "sought EEO counseling in April 2001, or approximately nine months after the incidents in question (July 2000)."[22]

---

[17]*Id.* at 6-7.

[18]Defendant's evidentiary submissions, Tab 3 (MSPB's acknowledgment that petition of review was filed).

[19]*Id.* at Tab 5 (EEOC decision), at 1.

[20]*Id.*

[21]*Id.* at Tab 4 (Notice of USPS's final agency decision), at 1.

[22]*Id.* at Tab 5 (EEOC decision), at 1.

Plaintiff filed the current suit on June 3, 2002 (deemed filed on May 24, 2002), once again alleging that the USPS discriminatorily failed to allow him on postal property to conduct business.[23]

## II. DISCUSSION

### A. Timeliness of EEO Counselor Contact

29 C.F.R. § 1614.105(a)(1) generally requires that an employee contact an EEO counselor within forty-five days of the alleged discrimination. The claim that plaintiff asserts here has been twice dismissed as untimely, on the grounds that he consulted an EEO counselor approximately *nine months* after the complained-of incidents, which is approximately *six times* the period allowed by law. Plaintiff nonetheless persists here, but he provides the court with absolutely no argument or authority as to *why* his claim is not barred for untimeliness, beyond his own sense of outrage. However, the court lays this defect aside for the moment.

### B. Timeliness of Current Action

Even if plaintiff could somehow overcome the above-described EEO time-bar, he has transgressed another deadline related to his tardy filing of the current action. Here, the relevant filing period is the ninety-day window within which a federal employee (or former federal employee) may file a Title VII civil action in federal court. *See* 42 U.S.C. § 2000e-16(c) (requiring that suit be filed "within 90 days of receipt of notice of final action taken by a[n] . . . agency. . . .").

The EEOC certified that it mailed to plaintiff, at his address in Huntsville, Alabama, a copy of the decision denying his appeal on February 6, 2002.[24] The EEOC presumes that the decision is received by the plaintiff within five calendar days after mailing.[25] Plaintiff does not submit any

---

[23]Complaint ¶4 (there are two consecutive paragraphs numbered "4" — this citation refers to the second of those).

[24]Defendant's evidentiary submissions, Tab 5 (EEOC decision), at 3.

[25]*Id.*

statement or evidence indicating the exact date upon which he actually received a copy of the EEOC decision.

That deficiency notwithstanding, the approximate date of plaintiff's receipt of the EEOC decision can be determined from a letter, submitted as part of defendant's evidentiary submissions, which plaintiff wrote to the EEOC concerning the denial of his appeal.[26] The letter contains two dates, a typewritten date of March 2, 2002, and a handwritten date of March 4, 2002, appearing underneath the signature.[27] The court gives the plaintiff the benefit of the later date, which is more advantageous to his case, although logic would dictate that the typewritten date accurately reflects the actual date that the letter was prepared, and the handwritten date appearing under the signature represents the actual date that plaintiff signed the letter.

In the letter, plaintiff states: "I called your office two week [sic] ago and I left a message for you to contact me . . . . I wish for your office to reconsider my appeal . . . . I feel that your office did not give my complaint-appeal full consideration."[28] Two weeks prior to March 4, 2002, was February 18, 2002 (which, incidentally, was a federal holiday). Thus, plaintiff's letter indicates that he received notice that his appeal had been denied no later than February 18, 2002. By the court's calculation (starting the count on the first business day after the federal holiday), plaintiff did not file his complaint until ninety-four days later — and this date is assuming that (1) plaintiff called the EEOC on the very same day that he received a copy of the decision, (2) it took 12 days for the notice of decision to reach plaintiff, and (3) the typewritten date on plaintiff's letter is incorrect. Even after giving plaintiff the benefit of every permissible inference, the evidence remains clear that

---

[26] *Id.* at Tab 6 (Plaintiff's letter to EEOC 3/2/02).
[27] *Id.*
[28] *Id.*

plaintiff's complaint with this court was not timely-filed.

Plaintiff has not set forth any reason why he should be excused from not filing his complaint in a timely manner. Plaintiff does not raise the issue of equitable tolling, but it is not properly invoked here, at any rate. Equitable tolling serves to excuse a plaintiff's untimely filing of suit, but the doctrine is available only when: "(1) the statutory notice does not advise plaintiff of the ninety-day limitations period; and (2) the plaintiff is misled by further communication from the EEOC or agency as to the limitations period." *Leonard v. Rumsfeld*, 146 F. Supp. 2d 1227, 1237 (M.D. Ala. 2001). Here, the copy of the decision mailed to plaintiff conspicuously stated that "[y]ou have the right to file a civil action in an appropriate United States District Court **within ninety (90) calendar days** from the date that you receive this decision" (bold type in original).[29] The court also recognizes that plaintiff, despite the fact that he is a *pro se* litigant, has a substantial amount of experience in this area, having filed over forty (40) EEO complaints, and, at least one prior judicial action, to date.[30] Further, there is no evidence of any misleading communication to plaintiff from the EEOC or any other agency, which may have dissuaded plaintiff from filing his claim with this court in a timely manner. Therefore, the court finds no valid reason why plaintiff's time for filing his complaint should be equitably tolled.

### III. CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment is due to be granted as to all of plaintiff's claims. An order consistent with this memorandum opinion shall be issued contemporaneously herewith.

---

[29] Defendant's evidentiary submissions, Tab 5 (EEOC decision), at 3.
[30] *Id.* at Tab 7 (judicial opinion 6/28/02), at 4-5.

DONE this __13th__ day of September, 2002.

*[signature]*

United States District Judge

-9-